**STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT**

**20-7**


SUCCESSION OF

MARY LEBLANC MOUTON



**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. P-20160382
HONORABLE EDWARD B. BROUSSARD, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**CANDYCE G. PERRET
JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, D. Kent Savoie, and Candyce G. Perret, Judges.



**REVERSED AND REMANDED.**

**Ramon John Fonseca, Jr.**
**Fonseca & Associates, LLC**
**921 Kaliste Saloom Road**
**Lafayette, LA   70508**
**(337) 456-1163**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **Tony J. Mouton**
    **Michael W. Mouton**
    **Debra Leblanc Carmouche**
    **Pamela A. Mouton Granger**

**Brad P. Scott**
**Ashley U. Schmidt**
**Scott, Vicknair, Hair & Checki, LLC**
**909 Poydras Street, Suite 1100**
**New Orleans, LA   70112**
**(504) 264-1057**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Geneva L. Wiltz**

**PERRET, Judge.**

In this succession proceeding, four of the nine children of the deceased, Mary LeBlanc Mouton ("Ms. Mouton"), appeal a judgment of homologation of the tableau of distribution. For the following reasons, we reverse the trial court's October 28, 2019 judgment that approved the tableau of distribution and authorized the payment of the alleged debts of the succession.

**FACTS AND PROCEDURAL HISTORY:**

Ms. Mouton never married and died intestate on January 23, 2016, leaving nine children as heirs. On June 17, 2016, her daughter, Geneva L. Wiltz (Appellee), petitioned to be appointed administratrix of her mother's succession; the court granted her request on June 21, 2016. At that time, Appellee also filed an Affidavit of Valuation and Detailed Descriptive List, which listed the following debts of Ms. Mouton:

> 1. Reimbursement due to GENEVA L. WILTZ: Improvements to Real Estate, appraisal fees, attorney fees....................$35,000.00[.]
>
> 2. Rural Development Mortgage Company..................$66,000.00[.]

On March 1, 2017, Ms. Mouton's children, Tony J. Mouton, Michael W. Mouton, Debra LeBlanc Carmouche and Pamela A. Mouton (collectively referred to as "Appellants") filed a Motion to Remove Succession Representative and to Appoint New Succession Representative. The motion to "revoke the appointment of Geneva L. Wiltz [Appellee] and to remove her as succession representative" was based upon the following:

> (a) That Geneva L. Wiltz has asserted claims against the estate which are insupportable and unenforceable and render her incapable of faithfully discharging her duties as a prudent administrator of the succession;
>
> (b) That, by asserting such claims, Geneva L. Wiltz has mismanaged her fiduciary duties to collect, preserve and manage the property of the estate; and,

(c) That, by asserting such claims, Geneva L. Wiltz cannot impartially and independently acknowledge or reject claims made against the succession, as is legally required of her.

At that time, Appellants requested that Tony J. Mouton be appointed administrator of the succession in place of Appellee. Appellants requested that this motion be set as a contradictory hearing and requested that a rule to show cause be issued and served on Appellee through her counsel of record. After a few continuances due to the Appellants being unable to serve Appellee, a rule to show cause was eventually issued setting the Motion to Remove Succession Representative and to Appoint New Succession Representative for hearing on July 31, 2017.

On July 25, 2017, Appellee filed a Memorandum in Opposition to the Petition to Remove Succession Representative and Appoint New Succession Representative wherein she alleges that she has "fully complied with all provision[s] of law relative to the administration of the property comprising the succession, [and that] there is simply no basis for the removal[.]" After a hearing, the trial court signed a judgment on August 31, 2017, denying Appellants' Motion to Remove Succession Representative and to Appoint New Succession Representative.

On February 12, 2018, Appellants filed a Motion to Traverse Detailed Descriptive List requesting that the descriptive list be amended to "delete the $35,000.00 claim made by [Appellee] against the succession and to include certain assets of the estate not listed by [Appellee]." Specifically, Appellants had issue with Appellee's descriptive list when she stated the following "debt" of the estate:

1. Reimbursement due to GENEVA L. WILTZ: Improvements to Real Estate, appraisal fees, attorney fees…………………$35,000.00[.]

Once again, Appellants requested that this motion be set as a contradictory hearing and requested that a rule to show cause be issued and served on Appellee through her counsel of record. Although a rule to show cause was issued setting the matter

2

for hearing on March 19, 2018, both the Appellee and Appellants filed motions to continue the hearing. Appellants' Motion and Order to Continue and Reset Hearing filed on July 19, 2018, stated that the "[p]arties have entered settlement negotiations and would like the hearing deferred without further date." However, the parties did not settle their differences and the Motion to Traverse has yet to be heard by the trial court.

On October 5, 2018, Appellee filed a Petition for Authority to Sell Immovable Property at Private Sale seeking authority to sell the residence owned by the estate. Appellee requested that this Petition be set as a contradictory hearing and requested that a rule to show cause be issued and served on Appellants through their counsel of record. After a hearing on December 10, 2018, the trial court granted the motion to return the estate property, ordered Michael Mouton to provide immediate access to the home located at 718 Hollier Road in Duson, Louisiana to Appellee, and authorized Appellee to sell the immovable property for $135,000.00.

On October 23, 2019, Appellee filed a Petition for Authority to File Tableau of Distribution and an accompanying Tableau of Distribution. Appellants were not served with the Petition for Authority to File Tableau of Distribution, nor did they receive any other type of notice of the filing of the petition despite having been served through their counsel of record in the past. Thereafter, on October 28, 2019, the trial court entered a Judgment Homologating Tableau of Distribution, specifically finding that Appellee provided the following proof:

> 1. Notice of the filing of a petition for authority to pay estate debts and charges of this succession has been published in accordance with law,
>
> 2. Notice of said filing has been mailed to all creditors requesting it and to all other creditors known or knowable by reasonably diligent efforts,

3

3. More than seven (7) days has elapsed since both the publication of the notice and the mailing of notices to creditors,

4. No opposition to the payment of said estate debts has been filed,

5. The proposed distribution is correct and the law and evidence are in favor of petitioner[.]

The judgment ordered for the Tableau of Distribution to be homologated and authorized Appellee to pay the following estate debts listed in accordance with said tableau:

| | | | |
|---|---|---|---|
| 1. GENEVA WILTZ | $575.00 | Reimbursement for fees paid for curative title work | |
| 2. GENEVA WILTZ | $2,623.23 | Reimbursement for sums paid to USDA for mortgage | |
| 3. GENEVA WILTZ | $29,237.90 | Reimbursement for sums paid for improvements on real estate | |
| 4. GENEVA WILTZ | $2,197.25 | Reimbursement for sums paid for repairs and maintenance on house | |
| 5. GENEVA WILTZ | $22,497.49 | Reimbursement for sums paid to Brad P. Scott -- Succession Attorney Fees and Cost | |
| 6. GENEVA WILTZ | $3,419.30 | Administrator's Fee | |
| TOTAL | $60,550.17 | | |

On November 12, 2019, Appellants filed a Petition to Annul Judgment and to Recover Succession Property, a petition that is still pending in the trial court. On November 25, 2019, Appellants also filed a Motion and Order for Suspensive Appeal from which this appeal commenced. Appellants argue that the Judgment Homologating Tableau of Distribution was improperly obtained by Appellee because she failed to cite or serve them, or their attorney, with the Petition for Authority to File Tableau of Distribution. Thus, Appellants argue that "the Petition for Authority to File Tableau of Distribution sought an *ex parte* judgment

4

homologating the Tableau of Distribution, depriving [them] of the opportunity to protect their property interests."

**STANDARD OF REVIEW:**

"Our review of the trial court's decision homologating the tableau of distribution is subject to the manifest error rule, and must be affirmed if the record as a whole reveals that there is a reasonable factual basis for the decision." *In re Succession of Manheim*, 98-2051, p. 5-6 (La.App. 4 Cir. 4/21/99), 734 So.2d 119, 123, *writ denied,* 751 So.2d 218 (La. 1999), *writ denied,* 751 So.2d 219 (La. 1999), and *writ denied,* 751 So.2d 220 (La. 10/8/99). However, "when a trial court applies incorrect legal principles and these errors materially affect the outcome of a case and deprive a party of substantial rights, legal error occurs." *Vidrine v. Vidrine*, 17-722, p. 8 (La.App. 3 Cir. 5/2/18), 245 So.3d 1266, 1274 (citing *Evans v. Lungrin*, 97-541 (La. 2/6/98), 708 So.2d 731). Legal errors are reviewed under the de novo standard of review. *Id.*

**DISCUSSION:**

On appeal, Appellants allege the following assignment of error:

> The Trial Court committed reversible legal error by rendering an *ex parte Judgment Homologating Tableau of Distribution* in favor of Ms. Wiltz without conducting a contradictory hearing with the Appellants, without requiring that Appellants and their counsel be statutorily notified of the filing of the *Petition for Authority to File Tableau of Distribution*, and without first determining the merits of Appellants' previously-filed *Motion to Traverse Detailed Descriptive List*. This legal error interdicted the Trial Court's fact-finding process because it foreclosed Appellants' arguments and evidence which, otherwise, would have easily defeated Ms. Wiltz' claim against the succession.

In response, Appellee alleges that she followed the procedural and legal requirements relative to the filing, notice, publication, submission, and obtaining of the Petition for Authority to File Tableau of Distribution and the Judgment Homologating Tableau of Distribution.

5

Louisiana Civil Code Article 871 provides that a "[s]uccession is the transmission of the estate of the deceased to his successors. The successors thus have the right to take possession of the estate of the deceased after complying with applicable provisions of law." Louisiana Code of Civil Procedure Article 3137 provides that a "descriptive list of succession property authorized by [La.Code Civ.P. art.] 3136 shall be accepted as prima facie proof of all matters shown therein, unless amended or traversed successfully." "Any interested person may traverse the descriptive list at any time, on contradictory motion served on the person filing it." *Id.* The following Louisiana Code of Civil Procedure Articles are also applicable to the case *sub judice*:

**Art. 3301. Payment of estate debts; court order**

A succession representative may pay an estate debt only with the authorization of the court, except as provided by Articles 3224 and 3302.

**Art. 3303. Petition for authority; tableau of distribution**

A. When a succession representative desires to pay estate debts, he shall file a petition for authority and shall include in or annex to the petition a tableau of distribution listing those estate debts to be paid. A court order shall not be required for the publication of the notice of filing of a tableau of distribution.

B. If the funds in his hands are insufficient to pay all the estate debts in full, the tableau of distribution shall show the total funds available and shall list the proposed payments according to the rank of the privileges and mortgages of the creditors.

**Art. 3304. Notice of filing of petition; publication**

Notice of the filing of a petition for authority to pay an estate debt shall be published once in the parish where the succession proceeding is pending in the manner provided by law. The notice shall state that the petition can be homologated after the expiration of seven days from the date of publication and that any opposition to the petition must be filed prior to homologation.

**Art. 3305. Petition for notice of filing of tableau of distribution**

An interested person may petition the court for notice of the filing of a tableau of distribution.

6

The petition for such notice shall be signed by the petitioner or by his attorney, and shall set forth: (1) the name, surname, and address of the petitioner; (2) a statement of the interest of petitioner; (3) the name, surname, and office address of the attorney at law licensed to practice law in this state to whom the notice prayed for shall be mailed; and (4) a prayer that petitioner be notified, through his attorney, of the filing of the tableau of distribution.

A copy of this petition shall be served upon the succession representative, as provided in Article 1314.

**Art. 3306.  Notice of filing of tableau of distribution; effect of failure to serve**

When notice has been requested in accordance with Article 3305, the succession representative, without the necessity for a court order thereon, shall send a notice of the filing of a tableau of distribution by mail to the attorney designated by the person praying for notice at the address designated.  Proof of mailing is sufficient; no proof of receipt is required.

If no notice of the filing of a tableau of distribution has been mailed when required under this article, a judgment homologating the tableau of distribution shall have no effect against the person praying for such notice.

**Art. 3307.  Homologation; payment**

A. An opposition may be filed at any time before homologation, and shall be tried as a summary proceeding.  If no opposition has been filed, the succession representative may have the tableau of distribution homologated and the court may grant the authority requested at any time after the expiration of seven days from the date of publication or from the date the notice required by Article 3306 is mailed, whichever is later.

B. If an opposition has been taken under advisement by the court after the trial thereof, notice of the signing of the judgment homologating the tableau of distribution, as originally submitted or as amended by the court, need be mailed by the clerk of court only to counsel for the opponent, or to the opponent if not represented by counsel.

C. After the delay for a suspensive appeal from the judgment of homologation has elapsed, the succession representative shall pay the debts approved by the court.

In this case, Appellants timely filed a contradictory Motion to Traverse Detailed Descriptive List, which was properly served upon Appellee through her

counsel of record and which also designated R.J. Fonseca, Jr. as their attorney of record. This motion clearly sought to protect Appellants' interest in the estate property and Appellee was fully aware that Appellants disputed the descriptive list as well as the disputed payment of any debt to herself. Applying the aforementioned legal precepts to the facts of this case, particularly La.Code Civ.P. arts. 3305 and 3306, we agree with Appellants that their Motion to Traverse Detailed Descriptive List served as a request for notice of the filing of the tableau of distribution and that the trial court erred in homologating the tableau of distribution wherein Appellee failed to cite and serve Appellants with both the Petition for Authority to File Tableau of Distribution and the Notice of Filing of Tableau of Distribution.

We find support for this position in the case of *In re Succession of Crumbley*, 06-402 (La.App. 3 Cir. 9/27/06), 940 So.2d 748, wherein we affirmed a trial court's judgment of possession to be a nullity pursuant to La.Code Civ.P. art. 2004. In *Succession of Crumbley*, this court found that the executor's failure to send the deceased's husband notice of filing of a petition for possession and final distribution prior to obtaining a judgment of possession constituted an ill practice that warranted nullification of the judgment of possession, where the executor was aware that the husband was represented by counsel, that he disputed the descriptive list of assets, and claimed that certain accounts were his separate property. Specifically, this court stated:

> We find that Kenneth W. Crumbley, Sr.'s claim of ill practices is supported by the record of these proceedings. The Executor was aware that Kenneth W. Crumbley, Sr. was an interested party and was represented by counsel. The Executor was likewise aware that Kenneth W. Crumbley, Sr. disputed the descriptive list of assets and claimed that certain accounts and investments were his separate property. The record does not contain evidence of sufficient notice to Kenneth W. Crumbley, Sr. of the filing of the petition for possession for homologation of first and final tableau of distribution *prior* to obtaining the judgment of possession in this matter. Therefore, we find that the

8

record supports the trial court's judgment declaring the January 9, 2002 judgment of possession a nullity pursuant to La.Code Civ.P. art. 2004.

*Succession of Crumbley*, 940 So.2d at 751-52.

As in the *Succession of Crumbley*, we find the record before us does not contain evidence of sufficient notice to Appellants of the filing of the Petition for Authority to File Tableau of Distribution and the Notice of Filing of Tableau of Distribution prior to the trial court's judgment that homologated the tableau of distribution. Again, La.Code Civ.P. art. 3306 states that "[i]f no notice of the filing of a tableau of distribution has been mailed when required under this article, a judgment homologating the tableau of distribution shall have no effect against the person praying for such notice."

For the above stated reasons, we reverse the judgment of the trial court that approved the tableau of distribution and authorized the payment of the alleged debts of the succession and we remand this matter to the trial court for further proceedings. The costs of this appeal are assessed to the Appellee.

**REVERSED AND REMANDED.**